UNITED STATES RUBBER PRODUCTS, INC., Plaintiff, vs. TWIN HIGHWAY TIRE COMPANY and others, Defendants: SOLBERG, Appellant: HEMPELMAN and others, Respondents.

*October 11, 1939—January 16, 1940.*

The cause was submitted for the appellant on the briefs of *Laurance J. Riley* and *Bundy, Beach & Holland,* all of Eau Claire.

For the respondent E. H. Hempelman there was a brief by *Wilcox, Wilcox & Sullivan* of Eau Claire, and oral argument by *Arthur B. Sullivan.*

*Alden Losby* of Eau Claire, for the respondents George J. Neher and Rosa A. Neher.

The following opinion was filed November 7, 1939:

FRITZ, J.    The appellant, Solberg, contends that, at the outset of the supplementary proceedings involved herein, the court commissioner had no power to entertain the proceed-

ings or to appoint a receiver under the existing circumstances. That contention is predicated on the following grounds: (1) That the execution and sheriff's return afforded no basis for supplementary proceedings, because the execution had not been countersigned by the owner of the judgment or his attorney as prescribed by provisions in sec. 272.05, Stats., and the sheriff had failed to indorse on the execution the time of its receipt as directed by sec. 272.08, Stats.; and (2) that no jurisdiction to entertain supplementary proceedings was acquired by the commissioner because, although the application was based entirely on the ground that the execution was returned unsatisfied, the return was impeached by proof on the hearing that to satisfy the judgment, which was for but $484.39, there were available the judgment debtor's service station and leasehold with fixtures and merchandise, which were not exempt from execution, and also bills receivable amounting to $1,850. On the other hand, the respondents Hempelman and Neher contend that, by reason of the *prima facie* evidence afforded by the sheriff's return that he could find no property, the commissioner did have jurisdiction to entertain the application, and that by reason of Solberg's voluntary participation in the proceedings and his express consent to the appointments and service of Fowler and his successor, Hempelman, as receivers, Solberg cannot successfully deny the jurisdiction to the commissioner or the validity of the appointments of the receivers. In making those contentions, the respondents rely upon the following facts: Solberg, instead of questioning the *prima facie* evidence afforded by the sheriff's return, and its sufficiency as basis for the exercise of jurisdiction by the commissioner over the subject matter for the purpose of supplementary proceedings, not only consented in writing to being examined for that purpose, and "to the granting, making and entry of the order and relief prayed for" in the affidavit of plaintiff's attorney upon which the proceedings were based, but also

testified that the sheriff did make an execution of the judgment and was not able to find anything with which to pay it; and furthermore stated, in answer to a question put to him by his attorney, that he did not have any objection to the appointment of Fowler as receiver of his business. Thereupon the commissioner, with Solberg's consent, signed the order on November 27, 1936, by which Fowler was "appointed receiver of the debts, property, equitable interests, rights, choses in action, chattels, business, and good will of said H. E. Solberg, judgment debtor herein, belonging, incident or pertaining to that business or property of said judgment debtor known as the Twin Highway Tire Company, with full power and authority as such receiver to employ counsel and to sue, compromise or settle claims due and owing to said judgment debtor and to make and enter into contracts necessary and incident to the conduct and operation of said business of said judgment debtor." Moreover, shortly after that appointment, Solberg joined with the receiver, and Hempelman, and Neher and his wife, as the owners and lessors of the land on which the service station was located, in a written contract which recited that all were desirous of cooperating for the purpose of placing the lessees on a sound business basis, and which provided that the appointment of the receiver and the existence of certain arrearages in rent should not be considered to breach the lease until after the expiration of two years, and that for the first year there was to be a reduction in monthly rent, and Solberg's arrearages in rent were to be paid by the receiver at a stipulated rate per month. The purpose of those provisions was to preserve the lease for the benefit of Solberg. Thereafter, Fowler, as receiver, and with Solberg as his employee at times, operated and was in possession of the service station under the leasehold and made improvements and additions to the property. When Fowler filed a report of his receivership and petitioned for his discharge on June 4, 1937, but recommended a con-

tinuation of the receivership with Hempelman as his successor, Solberg consented in writing to Fowler's release and the appointment of Hempelman as his successor, and "to the granting of all the relief and orders prayed for in Fowler's petition," including a continuation of the receivership. After Hempelman's appointment as receiver, Solberg continued to acquiesce in the receiver's possession under the lease and his operation of the business. In fact Solberg never objected thereto until Hempelman applied to the commissioner on December 1, 1938, for instructions as to the further conduct of the receivership.

It is evident that Solberg, by his participation and acquiescence in the supplementary proceedings and the conduct of the receivership, and by entering into the contract with Hempelman and the Nehers, as lessors, and Fowler, as receiver, induced Fowler and Hempelman to assume duties and responsibilities as receivers, and the Nehers to defer the exercise of their rights as lessors; and that thereby Solberg secured for two years the protection of a court receivership to preserve his business for his benefit. Under the circumstances, there is applicable to Solberg and his belated objections to the commissioner's orders, in so far as the latter were within the scope of the commissioner's jurisdiction in supplementary proceedings, the principle that one "having a choice between two inconsistent positions, who exercises that choice, is finally concluded and confined to the rights and remedies appropriate to the position so chosen and excluded from those consistent only with the repudiated one." *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363; *McDonald v. Markesan Canning Co.* 142 Wis. 251, 256, 125 N. W. 444. Consequently, by December, 1938, it had become too late for Solberg to question the sufficiency of the factual basis which the commissioner found existed and warranted the exercise of his jurisdiction and powers in supplementary proceedings, including the appointment of a receiver with the limited pow-

ers and authority necessary and proper therein. *Wright v. Nostrand,* 94 N. Y. 31, 45; *Hardt v. Levy,* 79 Hun, 348, 29 N. Y. Supp. 373; *Davenport Nat. Bank v. Ditmar,* 134 Wash. 439, 235 Pac. 955; *Greeley v. Provident Savings Bank,* 103 Mo. 212, 15 S. W. 429; *Dickerson v. Cass County Bank,* 95 Iowa, 392, 64 N. W. 395; *First Nat. Bank of Auburn v. Superior Court,* 12 Cal. App. 335, 107 Pac. 322; *Wenstrand v. Kiddoo,* 222 Iowa, 284, 268 N. W. 574, 577; *Olshan v. Chrystal,* 101 N. J. Eq. 799, 138 Atl. 884; *American Mine Equipment Co. v. Illinois Coal Corp.* (7th Cir.) 31 Fed. (2d) 507; *Beet Growers' Sugar Co. v. Columbia Trust Co.* (9th Cir.) 3 Fed. (2d) 755. However, inasmuch as the commissioner's jurisdiction in supplementary proceedings is limited to the exercise of the powers conferred by the statute (*Blabon v. Gilchrist,* 67 Wis. 38, 29 N. W. 220), it was beyond his power to vest the receiver with the powers of a general receiver in so far as the exercise thereof would be foreign to the scope and purposes of supplementary proceedings. Consequently, provisions in the commissioner's orders which purport to direct the receiver to continue the operation of the business were unauthorized, and the legal effect of the orders must be considered limited to such powers and duties as can be vested lawfully in a receiver in supplementary proceedings. Those powers and duties include, however, taking possession of the property of the judgment debtor and applying it under the orders of the court or judge toward the satisfaction of the judgment in the orderly conduct of supplementary proceedings. Sec. 273.08, Stats. In the exercise of the power conferred by that statute on "the court or judge," to order "any property of the judgment debtor . . . not exempt from execution, to be applied toward the satisfaction of the judgment," the commissioner could direct the receivers to take possession of and sell "any property" of the debtor in order to obtain proceeds to apply to the satisfaction of the judgment; and as the word "property," which is used in

sec. 273.08, Stats., includes, under the definition in sec. 370.01 (32), Stats., "property real and personal," the authorized possession and sale by the receiver extended to and included the debtor's rights under the ten-year lease.

The appellant further contends, however, that because the leasehold rights constituted an interest in real property, a sale thereof could not be ordered or made without reserving an equity of redemption in Solberg. On the other hand, the respondents contend that the rules applicable to providing for redemption from sales on execution or foreclosure are inapplicable to a receiver's sale in supplementary proceedings. Although sec. 272.39, Stats., which relates to execution sales provides that "within one year after an execution sale the real estate sold . . . may be redeemed by the payment to the purchaser," there is no similar statutory provision in respect to redemption from a sale made by a receiver in supplementary proceedings, pursuant to an order made by a court or judge, under the above-quoted provisions in sec. 273.08, Stats. The decision in *Second Ward Bank v. Upmann,* 12 Wis. *499, which is cited in support of appellant's contention, does not hold that there must be provision for redemption from a receiver's sale. The court held that the interest in land, which the debtor had in that case was such that it could have been subjected to sale on an execution levy without the appointment of a receiver; and the statement in the opinion in respect to redemption is in relation to solely the right of redemption in cases of sales on execution. On the other hand, as has been held in other jurisdictions, there is a material distinction between sales on execution or foreclosure and sales made by a receiver in order to pay creditors, because of which it is not necessary to provide for redemption in connection with the latter class of sales, even though the statutes require a provision for redemption in the case of sales on execution or foreclosure. *Watkins v. Minnesota Thresher Manuf'g Co.* 41 Minn. 150, 42 N. W. 862; *American Mine Equipment Co.*

*v. Illinois Coal Corp., supra; Beet Growers' Sugar Co. v. Columbia Trust Co., supra; Blair v. Illinois Steel Co.* 159 Ill. 350, 42 N. E. 895, 31 L. R. A. 269. Moreover in the case at bar there is no occasion as a matter of equity or justice for granting further time for redemption to Solberg. He had had, during the two years that the receivership was continued for his benefit, more than the usual period of redemption in the case of execution sales, and had the right to redeem by paying the plaintiff's judgment and the receivership costs at any time during that period. Neither can appellant's contention that the sale of the leasehold without reserving the right of redemption violated sec. 281.26, Stats., be sustained. Under its express terms that statute is applicable only to judgments in actions for ejectment or unlawful detainer. A receiver's sale in supplementary proceedings is not within its terms.

Solberg further contends that inasmuch as the commissioner had not made an order divesting Solberg of title to the leasehold or vesting title thereto in the receiver, or directing Solberg to convey to the receiver, and no such conveyance was made prior to sale or confirmation thereof by the commissioner, no title to the leasehold ever vested in the receiver, and therefore none could be conveyed to a purchaser at a receiver's sale. Appellant relies upon the proposition that "in the absence of legislation, no title to realty vests in the receiver except by a conveyance from the debtor executed by direction of the court." 23 C. J. p. 881, § 1049. In ch. 273, Stats., entitled "Remedies supplementary to execution," there is the provision that "the court or judge may order any property of the judgment debtor . . . not exempt from execution, to be applied toward the satisfaction of the judgment" (sec. 273.08, Stats.) ; and, as is stated above, the term "any property" in that statute includes property real as well as personal, and therefore the leasehold interest which is involved herein. Consequently, to enable the receiver as

the instrumentality of the court to apply the leasehold interest to the satisfaction of the judgment in accordance with the statute, the debtor's entire beneficial interest therein, including the power to dispose thereof, must be deemed, as a matter of law, to have passed to the receiver to the end that he can convert the debtor's property into money and thus effectuate the purposes contemplated under the statute. Under the circumstances there is applicable the court's statement in *Watkins v. Minnesota Thresher Manuf'g Co., supra* (p. 152):

"We deem it unnecessary to decide whether, by the appointment and qualification of the receiver, without a conveyance or assignment to him by the debtor, the legal title to real estate became vested in the receiver, or whether that remained in the debtor until a sale by the receiver. However that may be, the entire beneficial interest, with the power of disposition, passed to the receiver for the purposes of the trust, and to the end that he might convert the property into money for the general purposes contemplated." See also *American Mine Equipment Co. v. Illinois Coal Corp., supra*; *Attorney General v. Atlantic Mut. Life Ins. Co.* 100 N. Y. 279, 281 *et seq.*; *Cobb v. Camden Savings Bank,* 106 Me. 178, 76 Atl. 667; *Atlas Bank v. Nahant Bank,* 23 Pick. (Mass.) 480, 490; *American Nat. Bank v. National B. & C. Co.* (C. C.) 70 Fed. 420.

It follows that when the commissioner on November 27, 1936, at the request of the attorney for Solberg and with the latter's consent and approval, appointed the receiver of the debts, property, equitable interests, rights, choses in action, chattels, business, and good will of the judgment debtor, all of his beneficial interest therein passed by operation of law to the receiver in so far as necessary to effectuate the purposes of supplementary proceedings. Although the leasehold was not expressly mentioned in the order, Solberg's rights and interest therein were included in the terms "property, equitable interests, rights," etc. And that he so understood and intended is apparent from the fact that he and the re-

ceiver and Hempelman and the Nehers joined in the contract of December 31, 1936, under which the receiver with Solberg's approval entered into possession and control of the leasehold premises and made changes and improvements thereon, and otherwise exercised, on the one hand, the lessees' rights thereunder, and performed, on the other hand, the obligations of the lessees, including even the payment in part of Solberg's arrearages in rent. After having thus participated and acquiesced in the apparent vesting of the lessees' leasehold and rights of possession and control thereunder in the receiver, and thereby inducing the Nehers to consent as lessors to modifications of the lease and the waiver of defaults by reason of which they were entitled to terminate Solberg's rights thereunder, in December, 1936, he must be considered estopped from maintaining, as he attempted to do for the first time in December, 1938, that his rights and interests thereunder had not become vested in the receiver. *Baierl v. Riesenecker,* 201 Wis. 454, 461, 227 N. W. 9, 230 N. W. 605; *Marling v. FitzGerald,* 138 Wis. 93, 120 N. W. 388. It follows that Solberg's contention that the receiver could convey no title to the leasehold to the purchaser at the receiver's sale cannot be sustained; and in view of the reasons that compel that conclusion there was no necessity for requiring Solberg to execute an assignment of the lease to the receiver. Consequently, in so far as the order of the circuit court which is under review so required, Solberg was not prejudiced thereby; and as the order was proper in all other respects it must be affirmed.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, with $25 costs, on January 16, 1940.