RACINE UNIFIED SCHOOL DISTRICT, Petitioner-Respondent,

v.

SERVICE EMPLOYEES' INTERNATIONAL UNION, LOCAL 152, Respondent-Appellant.

Court of Appeals

*No. 89–1609. Submitted on briefs May 16, 1990.—Decided September 5, 1990.*

(Also reported in 462 N.W.2d 214.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Mark F. Nielsen,* of *Schwartz, Weber, Tofte & Nielsen* of Racine.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *JoAnn M. Hart* and *Douglas E. Witte,* of *Melli, Walker, Pease & Ruhly, S.C.* of Madison.

Before Nettesheim, P.J., Scott, J., and Circuit Judge Daniel P. Anderson, acting.

ANDERSON, J.   Service Employees' International Union, Local 152 appeals from a judgment vacating an arbitration award. The arbitrator ordered a terminated employee reinstated after a one-year suspension without pay. The arbitrator found that the Racine Unified School District denied the employee "basic due process" required by the collective bargaining agreement. We conclude the circuit court erred and reverse.

Steven Manbeck was employed by the Racine Unified School District (district) as a second-shift engineer at Walden High School. During working hours, Manbeck was approached by a student seeking marijuana. Immediately after his shift, Manbeck met with the student off the school grounds and shared marijuana with the student. Upon learning about the incident, the district suspended Manbeck with pay pending a full investigation. Mary Jane Hernandez, the Administrative Assistant to the Assistant Superintendent for Staff Personnel Services, began an investigation. She interviewed witnesses, decided what charges to bring, issued the charges, determined which witnesses were to be called at the hearing, presided at the hearing, and made the decision to terminate Manbeck.

At the time, Manbeck was a member of Local 152 of the Service Employees' International Union (union).[1] The collective bargaining agreement (contract) required

[1]The relationship between the district and the union was governed by a collective bargaining agreement entitled "1985–87 Labor Agreement." The contract governs, inter alia, discipline, termination and grievance procedures. Applicable portions to this case are set forth:

Article XIII—GRIEVANCE PROCEDURE:

that the district provide "basic due process" prior to a decision that results in termination. Manbeck and the

. . ..

6. a. The decisions of the arbitrator shall be final and binding on Unified, the Union, and any employees involved.

   b. The arbitrator may consider or decide only such issues as are presented to him by Union or Unified. His decision must be based solely upon an interpretation of the provisions of this Agreement and has no authority to alter in any way the terms and conditions of this Agreement.

. . ..

   d. The decision of the arbitrator may or may not include backpay, provided, however, that any backpay award will not extend beyond twenty (20) working days prior to the grievance being filed in writing, provided the employee knew or should have known of the event that gave rise to the grievance.

. . ..

Article XVI—TERMINATION:

1. *Discharge* The employment of an employee may be terminated for good cause.

   a. The reasons for any contemplated dismissal must be presented in writing to the employee and a copy shall be sent to the Union. Basic due process will be given the employee prior to a decision that results in discharge. [Emphasis added.]

. . ..

Article XVII—DISCIPLINARY ACTION:

1. For good cause, an employee may be subject to any of the following types of discipline.

   a. oral reprimand
   b. written reprimand
   c. suspension without pay for a time certain
   d. discharge

. . ..

4. The employer recognizes the concept of progressive discipline and will utilize such in appropriate cases.

. . ..

union received notification of the charges and that a disciplinary hearing would take place on March 13, 1987. At a meeting with union officers prior to the formal disciplinary hearing, Hernandez told union representatives that she believed Manbeck was guilty and that he should be terminated.

On March 13, the union sought to have Hernandez remove herself as presiding officer on the grounds that Manbeck would be denied "basic due process." She declined and presided at the hearing despite continued objection by the union.[2] Letters terminating Manbeck's employment were signed by Hernandez.

The union grieved the termination through the grievance procedure set forth in the contract. At the arbitration hearing, the union argued that the district did not have just cause to terminate Manbeck and that he did not receive "basic due process" as required by the contract.

The arbitrator found that the employee did smoke marijuana with the student and that this constituted just cause under the contract for termination. The arbitrator found, however, that Manbeck was denied "basic due process" because Hernandez participated as counsel for the district prior to the termination hearing and then acted as decisionmaker. The arbitrator interpreted the

---

6. Only the Assistant Superintendent for Staff Personnel Services or his/her designee may impose disciplinary action which results in a loss of pay to the employee and only after the employee has received basic due process. [Emphasis added.]

[2] In refusing to disqualify herself as the presiding officer, Hernandez stated:

If and I find that if today the union is able or legal counsel is able to present facts that would cause the district, myself as the representative of the district, to take a different stance from that which we believe to be the case, then Mr. Manbeck would have due process.

contract language "basic due process" as requiring an impartial decisionmaker. The arbitrator found that Hernandez's prior participation required her to be disqualified as the decisionmaker because the risk of a predetermined conclusion was intolerably high.

The arbitrator reduced Manbeck's penalty from termination to a one-year suspension without pay. He also required Manbeck to participate in the district's Employee Assistance Program for one year after reinstatement. The arbitrator believed Manbeck's actions should not go unpunished, but that the violations of Manbeck's "basic due process" prohibited his termination.

The district moved to vacate the arbitration award under sec. 788.10(1)(d), Stats.[3] The circuit court vacated the arbitration award for two reasons: (1) The arbitrator looked to external law in interpreting the contract and applied the wrong law, and (2) the award violated a public policy of protecting students from drug use in the schools. We disagree with the circuit court and therefore reverse.

It is settled law in Wisconsin that a reviewing court can overturn an arbitrator's award only on narrow grounds. The role of a court is to assure that the parties receive the arbitration they contracted for and not to substitute the court's judgment for that of the arbitra-

---

[3]The relevant language of sec. 788.10(1)(d), Stats., states:

**788.10  Vacation of award, rehearing by arbitrators. (1)** In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

. . ..

(d)  Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

tor's judgment. *City of Madison v. Madison Professional Police Officers Ass'n*, 144 Wis. 2d 576, 585–86, 425 N.W.2d 8, 11 (1988). The court will not overturn the arbitrator's decision for mere errors of law or fact. *Id.* at 586, 425 N.W.2d at 11. The court will only vacate the arbitrator's decision if there is a "perverse misconstruction or positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *Id.* We conclude that none of these grounds exists to overturn the arbitrator's decision.

"Basic due process" is not defined in the contract between the union and the district. The arbitrator's interpretation that "basic due process" rights in a disciplinary hearing require an impartial decisionmaker is not a perverse misconstruction of the contract.

The briefs submitted to the arbitrator indicate that the arbitrator's interpretation was not perverse. The briefs argued whether or not Hernandez was in fact impartial, not whether Hernandez was required to be impartial. The posture of the arguments of both parties stated that "basic due process" required an impartial decisionmaker. Because the arbitrator "may consider or decide only such issues as are presented to him," 1985–87 Labor Agreement, Art. XIII, sec. 6.b., he was not deciding whether or not an impartial decisionmaker was required. In fulfilling his duty as an arbitrator, it was appropriate that the arbitrator accept both parties' interpretation that an impartial decisionmaker was required. Thus, accepting a standard both parties proposed as the meaning of the contract is not a perverse misconstruction of the contract.

The arbitrator's application of an impartial decisionmaker standard is not a manifest disregard of the

law. The district argues, and the circuit court agreed, that the arbitrator applied external law to the contract. The district further argues that the correct external law to apply is found in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In a pretermination hearing, *Loudermill* only requires notice of the charges and an opportunity to respond. *Id.* at 542. The district argues that the impartial decisionmaker standard was more than it was required to give under the contract.

We reject the argument. The arbitrator did not apply external law. He applied a standard supplied to him by the parties as their interpretation of the contract language. It is clear from its brief to the arbitrator that the district conceded that an impartial decisionmaker standard should apply. The district stated that: "It is well settled that minimum due process requires . . . an *impartial decisionmaker*." (Emphasis in original.) The district then analyzed the requirement by using *State ex rel. DeLuca v. Common Council*, 72 Wis. 2d 672, 242 N.W.2d 689 (1976). In that case, the Wisconsin Supreme Court adopted the position that due process is not served when the person conducting both the investigative and adjudicative powers has an intolerable risk of actual bias or prejudgment. *Id.* at 682–85, 242 N.W.2d at 695–96. The union set forth a similar standard.

It was after the arbitrator applied the *DeLuca* standard that the district argued to the circuit court that only notice and an opportunity to respond were required. Had an external standard been the issue, the district's brief to the arbitrator would have argued the application of *Loudermill* instead of *DeLuca*. The district cannot change its interpretation of the contract after the arbitrator used the district's interpretation to decide Her-

nandez's impartiality and the parties agreed to be bound by the decision. Under these circumstances, one "having a choice between two inconsistent positions, who exercises that choice, is finally concluded and confined to the rights and remedies appropriate to the position so chosen and excluded from those consistent only with the repudiated one." *United States Rubber Prods., Inc. v. Twin Highway Tire Co.*, 233 Wis. 234, 240, 288 N.W. 179, 181 (1940).

Wisconsin's commitment to impartial decisionmaking and the arbitrator's adoption of this commitment can hardly be equated with a manifest disregard for the law. The Wisconsin Supreme Court has stated that it is "undisputable that a minimal rudiment of due. process is a fair and impartial decisionmaker." *Guthrie v. WERC*, 111 Wis. 2d 447, 454, 331 N.W.2d 331, 335 (1983). *Guthrie* mandates that whenever a decisionmaker has acted at one time as counsel to any party in the same action, that person should be automatically disqualified. *Id.* at 458, 331 N.W.2d at 336.

Furthermore, it is not a manifest disregard of the law to recognize that the contract gave employees greater rights in a disciplinary setting than that which the law would normally accord.

After interpreting the contract, the arbitrator concluded that one who performed the initial investigation, lodged the complaint, performed the hearing preparation on behalf of the district, and made the ultimate decision cannot be neutral. Any other decision of this court would require substituting our judgment for that of the arbitrator's judgment. *Madison Professional Police Officers Ass'n*, 144 Wis. 2d at 585, 425 N.W.2d at 11. We cannot make such a substitution. *See Nicolet High School Dist.*

*v. Nicolet Educ. Ass'n,* 118 Wis. 2d 707, 712-13, 348 N.W.2d 175, 178 (1984).

The final possible ground for vacating the arbitrator's decision is whether Manbeck's reinstatement violated strong public policy. *See Madison Professional Police Officers Ass'n,* 144 Wis. 2d at 586, 425 N.W.2d at 11. The circuit court found that Manbeck's reinstatement violated the public policy of protecting students from drug use in the school environment. The district and the circuit court used public policy arguments to justify ignoring contractual requirements the district agreed to follow. The district and the circuit court would disregard Manbeck's contractual rights because his conduct was reprehensible. We do not agree with this reasoning.

When the parties enter into a collective bargaining agreement, they agree to be bound by its terms. As long as the contract provision itself is not against public policy, public policy cannot be used to avoid a result one of the parties dislikes. In this matter, only the result is alleged to be against public policy and not any specific contract provision. For example, enforcement of the contract providing "basic due process" does not compel the doing of an illegal act, *Board of Educ. v. WERC,* 52 Wis. 2d 625, 634-35, 191 N.W.2d 242, 247 (1971); violate any ordinance, *WERC v. Teamsters Local No. 563,* 75 Wis. 2d 602, 612, 250 N.W.2d 696, 701 (1977), *overruled on other grounds, Madison Professional Police Officers Ass'n,* 144 Wis. 2d at 585, 425 N.W.2d at 11; or violate a constitutional provision, *Wisconsin Professional Police Ass'n v. County of Dane,* 106 Wis. 2d 303, 317, 316 N.W.2d 656, 662 (1982).

We recognize that there are cases which hold that an arbitrator's reinstatement of an employee, when that employee's conduct is clearly against public policy, can

be vacated. *See Delta Air Lines, Inc. v. Air Line Pilots Ass'n Intern'l,* 861 F.2d 665 (11th Cir. 1988), *cert. denied,* 110 S. Ct. 201 (1989); *Georgia Power Co. v. International Brotherhood of Elec. Workers, Local 84,* 707 F. Supp. 531 (N.D. Ga. 1989), *aff'd,* 896 F.2d 507 (11th Cir. 1990); *Russell Memorial Hosp. Ass'n v. United Steelworkers of America,* 720 F. Supp. 583 (E.D. Mich. 1989). These cases are easily distinguishable from the instant case. In each of these cases, the arbitrator held that the employer did not have just cause to terminate the employee despite the fact that the employee's conduct clearly violated public policy. The reason the reviewing courts overturned these awards is that the contract, as interpreted, allowed conduct against public policy.

The case before us is different because the arbitrator did find that Manbeck's conduct was just cause for termination. As interpreted, the contract cannot be read to approve of Manbeck's conduct. Thus, the contract is in conformance with the public policy of ridding the school environment of drug influences. However, ordering Manbeck's reinstatement after a one-year suspension without pay is to remedy the district's breach of its "basic due process" obligation. Ordering reinstatement to remedy the district's breach of the contract does not violate public policy in the same way as did the awards in *Delta Air Lines, Georgia Power,* and *Russell Memorial Hospital.*

We conclude that public policy is not offended by the type of punishment and sanctions selected by the arbitrator in this case.[4] It was the district which created

___

[4]The trial court indicated that remanding the complaint for a new hearing by the district was not an option open to the arbitrator. The parties do not challenge the trial court's opinion on appeal.

the dilemma before us and which required the arbitrator to select the appropriate remedy. As such, the arbitrator was forced to consider and balance competing public policies—enforcement of a collective bargaining agreement promising "basic due process" in a grievance proceeding on the one hand and the protection of students from those who traffic in drugs on the other hand. The arbitrator's decision on this question does not constitute perverse misconstruction, positive misconduct, manifest disregard of the law, or a violation of strong public policy. *Madison Professional Police Officers Ass'n,* 144 Wis. 2d at 586, 425 N.W.2d at 11. The arbitrator's award must be reinstated.

*By the Court.*—Judgment reversed and cause remanded with directions.